## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**BETHANY ANN OWENS,**
        **Plaintiff,**

**v.**                                                    **CASE NO. 2:14-cv-17942**
**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

        **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before this court is the Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Brief in Support of Defendant's Decision (ECF No. 11) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 12).

### Background

Bethany Ann Owens, Claimant, applied for supplemental security income (SSI) and disability insurance benefits (DIB) on March 4, 2011, alleging disability condition beginning on July 31, 2008 (Tr. at 198-203, 204-210). The claims were denied initially on May 3, 2011 (Tr. at 133-138) and upon reconsideration on October 11, 2011 (Tr. at 143-148). Claimant requested a hearing by Administrative Law Judge (ALJ) on October 25, 2011. In her request for a hearing before an ALJ, Claimant stated that she disagreed with the determination made on her claim for SSI Disability/Title II Benefits because the decision was contrary to the medical evidence and D Regulations (Tr. at 149-150). Claimant appeared via video teleconference on October 11, 2012, from Parkersburg, West Virginia, for the hearing before the ALJ, who was in Charleston, West Virginia (Tr. at 71-128). In the decision dated November 27, 2012, the ALJ determined that based on the application for a period of disability and disability insurance benefits, Claimant was

1

not disabled under the Social Security Act.  Also, the ALJ determined that based on the application for supplemental security income, Claimant was not disabled under the Social Security Act (Tr. at 43-68).

On January 21, 2013, Claimant filed a Request for Review of Hearing Decision of the ALJ because the decision was contrary to the medical evidence and regulations (Tr. at 70).  On June 27, 2013, the Appeals Council granted Claimant more time before acting on the claim (Tr. at 8).  On April 9, 2014, the Appeals Council received additional evidence and made it part of the record.  That evidence consisted of Exhibit 20E – Representative brief from Jan Dils, Esq., dated January 18, 2013; Exhibit 23F – Records from Camden Clark Memorial Hospital from November 27, 2012 through March 28, 2013; and Exhibit 24F – Records from Schwabe and Associates from September 4, 2012 through May 22, 2013.  On April 9, 2014, after considering Claimant's reasons for disagreeing with the ALJ's decision, the additional evidence submitted and made part of the record and whether the ALJ's action, findings, or conclusions were contrary to the weight of the evidence of record, the Appeals Council found that the information did not provide a basis for changing the ALJ's decision (Tr. at 1-7).

On June 9, 2014, Claimant bought the present action requesting this Court to review the decision of the defendant and that upon review, it reverse remand or modify that decision.

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.   By standing order, this case was referred to this United States

Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 48). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of bipolar disorder, attention deficit-hyperactivity disorder, generalized anxiety disorder and borderline intellectual functioning (Tr. at 49). At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in 20 C.F.R. 404 Subpart P, Appendix 1. (*Id.*) The ALJ then found that Claimant has a residual functional capacity (RFC) to perform a full range of work at all exertional levels, reduced by nonexertional limitations[1] (Tr. at 52). As a result, the ALJ found that Claimant can return to her past relevant work as an overnight stocker (Tr. at 61). The ALJ held that Claimant has not been under a disability from July 31, 2008, through the date of the hearing decision (Tr. at 62). On this basis, benefits were denied (Tr. at 63).

---

[1] Claimant can understand, remember and carry out simple, repetitive, routine type tasks in a non-production rate, non-pace rate, no quota type environment. She may have brief contact with the public and only occasional contact with her coworkers and supervisors. However, she is limited to only minimal close coworker contact on a team basis to complete a task. This individual would need a stable work setting with little change in terms of processes employed, tools used or the setting itself, and those changes, when introduced would need to be introduced gradually (Tr. at 52).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

At the time of the hearing, Claimant was 33 years old (Tr. at 79).  She had a daughter that was three years old.  She was unmarried and living alone with her daughter. Claimant graduated from high school (Tr. at 80).  She was in reading improvement classes and general studies math.[2]

---

[2] Claimant testified that the school "dropped [her] from an applied math class down to the general studies of math" (Tr. at 80).

Claimant has experience working at McDonald's, Walmart and the Dollar Tree (Tr. at 83, 87). She has also worked at a nursing home and as an elderly caregiver (Tr. at 83-84).

The Medical Record

From July 2009, through February 2010, Kathryn Worthington, M.D., staff psychiatrist at Westbrook Health Services, prescribed psychotropic medication for Claimant due to her diagnoses of major depressive episode, recurrent, without psychotic features and anxiety disorder, NOS (Tr. at 393-411). Psychiatric Notes reflect that Claimant's prescribed Prozac and Vistoril were "working well" (Tr. at 410). During an October 2009 assessment, Claimant reported that "[S]he has not had any employment problems during the last thirty days. [Claimant] states that she is not troubled by employment problems and feels that it is not important for employment counseling" (Tr. at 403).

Claimant started undergoing mental health treatment at Schwabe & Associates in March 2010 (Tr. at 435-474, 633-654). Treatment notes dated October 2011 through August 2012 continue to describe Claimant as doing fine and that her medications were working well with no concerns (Tr. 634-54). In March 2012, it was noted that Claimant's attention was "ok" while at work (Tr. 644).[3]

State agency consultant G. David Allen, PhD, submitted a psychiatric review technique dated April 29, 2011, and determined that Claimant had mild restrictions in activities of daily living, moderate limitations in maintaining social functioning and in maintaining concentration, persistence, and pace, and no episodes of decompensation (Tr. at 424). On a mental residual functional capacity (RFC) form, Dr. Allen reported the following:

---

[3] Records also establish that Plaintiff earned $759.00 during the first quarter of 2012 and $1,564.00 during the second quarter of 2012, both of which did not constitute substantial gainful activity (Tr. at 48, 235-236).

> Claimant did evidence some difficulty managing a frustrating circumstance with regard to the scheduling of CE appointment. All in all, it appears the claimant has sufficient mental and emotional residual for simple routine activities that occur on a repeating basis. Can probably handle minor changes in procedure. Should have minimal exposure to crowds, the public and situations where intensive team effort is demanded (Tr. at 431).

In September 2011, consultative examiner, Brenda Tebay, M.A., completed an Adult Mental Profile Including Testing (Tr. at 475-479). Ms. Tebay reported that Claimant drove herself to the evaluation that day (Tr. at 476). Ms. Tebay diagnosed Claimant with Borderline Intellectual Functioning based on Claimant's Full Scale IQ score of 74 (Tr. at 477-478).

In October 2011, state agency consultant James Binder, M.D., completed a psychiatric review technique form (PRTF) and determined that Claimant had mild restrictions in activities of daily living, moderate limitations in maintaining social functioning and in maintaining concentration, persistence, and pace, and no episodes of decompensation (Tr. at 490). He assessed a mental RFC and determined that Claimant was moderately limited in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. at 495-498).

In a letter dated November 7, 2012,[4] obtained by Claimant's counsel after the administrative hearing, Claimant's treating psychologist Tina M. Leisure, PhD, and reviewing psychologist Ninette Fernandes, M.A., stated, in part, the following:

> Bethany has a diagnosis of Attention-Deficit/Hyperactivity-Disorder and Bipolar Disorder Not Otherwise Specified for which she is being psychiatrically treated.
>
> ***
>
> While Bethany is compliant with therapy, and I am pleased to report her progress, it does appear, however, that her symptoms would continue to interfere with her ability to be gainfully employed.  She also has psychosocial stressors that exacerbate her symptoms and these appear to impact her ability in making performance adjustments, which could cause a severe limitation in her occupational functioning.  With treatment and interventions, Bethany's ability to function, at this point of time, is satisfactory, and her mood disorder does not appear to be acute or debilitating. However, her symptoms could resurface should a stressful situation arise and this could impair her ability to act in an emotionally stable manner.  In light of Bethany's diagnosis and her prognosis, it appears that her symptoms pose a limitation that could interfere with her ability to maintain employment.  (Tr. at 721-722).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to comply with 20 C.F.R. § 404.1527 in assigning "little weight" to the opinion of treating sources, Ninette Fernandez, LLB, MA, and Tina M. Leisure, PhD (ECF No. 10).  Claimant argues that the ALJ denial was based on the following two reasons, instead of the regulatory factors:   1.The lack of objective evidence; and 2. Inconsistency with the record as a whole.

In response, Defendant asserts:

---

[4] The Appeals Council received additional evidence after the hearing which it made part of the record.  That evidence consisted of a representative brief by Jan Dils, Esq., dated January 18, 2013, records from Camden Clark Memorial Hospital from November 27, 2012, through March 28, 2013 and records from Schwabe and Associates from September 4, 2012, through May 22, 2013 (Tr. at 6).

[Claimant's] argument must fail because the ALJ properly acknowledged this opinion and reasonably determined it was not entitled to more than little weight because it: (1) offered a conclusions reserved to the Commissioner, (2) was internally inconsistent with the treatment notes from Schwabe (which document that [Claimant] felt great and had no new concerns from March 2010 through November 2012), and (3) was inconsistent with [Claimant]'s admitted activities of daily living, which included primarily raising her toddler (Tr. at 58-61). [Claimant] failed to meet her burden of proof. (ECF No. 11).

<u>Mental Impairments</u>

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2014). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2014). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2014). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2014). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2014). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2014). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe,"

8

unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2014).  Fourth,

if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity

to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2014).  Fifth,

if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will

assess the claimant's residual functional capacity.   §§ 404.1520a(d)(3) and 416.920a(d)(3)

(2014).

The ALJ held that "The severity of the claimant's mental impairments, considered singly

and in combination, do not meet or medically equal the criteria of Listings 12.02, 12.04, 12.05

and 12.06 (Tr. at 49).

Paragraph (A) of the relevant Listings in this case requires Claimant to demonstrate a loss

of specific cognitive abilities or affective changes and the medically documented persistence of

at least one of the following:

1. Disorientation to time and place; or
2. Memory impairment, either short-term, intermediate, or long term; or
3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
4. Change in personality; or
5. Disturbances in mood; or
6. Emotional liability and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 IQ points from premorbid levels.

Paragraph (B)[5] requires Claimant's mental impairment results in at least two of the

following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

---

[5] What is referred to as paragraph B criteria in Listings 12.02, 12.04 and 12.06, is considered paragraph D criteria of Listing 12.05.

Paragraph (C) requires "medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or physosocial support and one of the following:"

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

In assessing Claimant's mental impairments, the requirements in paragraph A are met when there is mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions.  The ALJ found that Claimant does not meet the paragraph A requirements "because the claimant has reported that she has no problem with personal care, and that she is capable of caring for her toddler" (Tr. at 52).  In assessing Claimant's paragraph B criteria, the ALJ found Claimant to have "mild" limitation in activities of daily living. In social functioning and concentration, persistence or pace, the ALJ found Claimant to have moderate difficulties.  The ALJ found Claimant to have no episodes of decompensation, of extended duration (Tr. at 50-51).  In assessing Claimant's paragraph C criteria, the ALJ found that that the evidence failed to demonstrate the presence of the criteria (Tr. at 51).  The ALJ stated that "The claimant meets none of these criteria."  (*Id.*)

Listing 12.02 describes organic mental disorders as "Psychological or behavioral abnormalities associated with a dysfunction of the brain." To demonstrate disability Claimant must satisfy requirements in paragraphs (A) and (B) or illustrate the requirements in paragraph

(C) are satisfied.  The ALJ correctly held that Claimant did not satisfy the criteria in paragraphs (B) and (C) for Listing 12.02.

Listing 12.04 describes affective disorders as "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  To demonstrate disability Claimant must satisfy requirements in paragraphs (A) and (B) or illustrate the requirements in paragraph (C) are satisfied.  The ALJ correctly held that Claimant did not satisfy the criteria in paragraphs (B) and (C) for Listing 12.04.

Listing 12.05 addresses mental disabilities including mental retardation and contains additional prongs that must be met.  Listing 12.05 mental disabilities refer to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. *See* 20 C.F.R. 404 Subpart P, Appendix 1, Listing § 12.05.  In order to satisfy the listing requirements for mental retardation, Claimant must meet the Listing description and one of the following four prongs:

(a) Mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions, such that the use of standardized measures of intellectual functioning included, OR
(b) A valid verbal, performance, or full scale IQ of 59 or less, OR
(c) A valid verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work related limitation of function, OR
(d) A valid verbal, performance or full scale IQ of 60-70 resulting in at least one of the following:  (1)  Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3)  Marked difficulties in maintaining concentration, persistence, or pace; OR (4) Repeated episodes of decompensation, each of extended duration.

The ALJ held that the requirements for Listing 12.05 "are not met because Claimant has reported that she has no problems with personal care and that she is capable of caring for her

toddler" (Tr. at 52).   Although the ALJ recognized Claimant was evaluated with a Global Assessment of Functioning (GAF) score of 60 on March 8, 2010, he gave it little weight finding it was not supported by objective evidence and it is inconsistent with the record as a whole (Tr. at 59).   The ALJ gave "more weight to the objective details and chronology of the record, which more accurately describe the claimant's impairments and limitations." The ALJ stated that the assessment of Claimant's GAF of 60 "seems predominantly based upon the claimant's misleading representations." (*Id.*)

The ALJ noted that a GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning.  The ALJ found that even though Claimant's GAF score places her in the borderline intellectual functioning range of intelligence, her borderline intellectual functioning does not preclude her from work like activity (Tr. at 57).   Later, during a consultative examination in September 2011, Claimant's intellectual functioning full scale IQ test score was 74 (Tr. at 477). The ALJ stated that a GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well and has some meaningful relationships (Tr. at 59).  The ALJ held that Claimant's GAF scores of 60 and 74 were considered and that the scores supported his decision. The ALJ correctly held that Claimant did not satisfy the paragraphs (A), (B) and (C) for Listing 12.05.

Listing 12.06 addresses anxiety related disorders.   The Listing states that "In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders."  The ALJ stated that "there is no evidence that

the claimant's anxiety has resulted in a complete inability to function independently outside the area of one's home" (Tr. at 51).  The ALJ correctly held that Claimant did not satisfy the paragraphs (B) and (C) of Listing 12.06.

<u>Treating Physician</u>

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner.  Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, than to non-examining sources). Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).  These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good

reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2), 416.927(d)(2).

Claimant argues the following:

> [A] treating physician's opinion is generally entitle[d] to more weight than that of a consulting physician. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. *See* 20 C.F.R. § 404.1527(e).
>
> Furthermore, 20 C.F.R. § 404.1527(d)(2) requires that the ALJ always give *good reasons* in the decision for not giving controlling or deferential weight to a treating source's medical opinion(s). Social Security Ruling 96-2p clarifies this requirement by stating that when a decision is not fully favorable, the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (ECF No. 10).

In this case, the record includes a comprehensive medical opinion from Claimant's treating psychologists, Ninette Fernandes, LLB, MA, and Tina M. Leisure, PhD (Tr. at 721-722). The ALJ stated the following:

> They [Ms. Leisure and Dr. Fernandes] opined the claimant was making progress and was compliant with her therapy. However, they opined that the claimant's symptoms would continue to interfere with her ability to be gainfully employed. In addition, they believed she had psychosocial stressors that exacerbated her symptoms and affected her ability to make performance adjustments. With treatment and intervention, the claimant's ability to function was satisfactory and her mood disorder did not appear acute of debilitating. However, they noted her symptoms could resurface at any time. In summary, they opined her symptoms posed a limitation that could interfere with her ability to

14

maintain employment.  The undersigned has given little weight to this opinion because it is not supported by objective evidence and it is inconsistent with the record as a whole.  The undersigned finds this conclusion has no probative value and rejects it.  As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not supported by objective evidence and it is inconsistent with the treatment notes from Schcwabe; which document that the claimant feels great and has no new concerns.  This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described in this decision. (Tr. at 58).

The ALJ gave little weight to the opinions of Ms. Fernandes and Dr. Leisure (Tr. at 58).

Claimant asserts that the ALJ should have given more weight to the opinions of Ms. Fernandes and Dr. Leisure, as contained in a letter to Claimant's counsel dated November 7, 2012 (Tr. at 721-722).  Claimant argues:

A review of the record clearly demonstrates that the opinions of Ms. Fernandes and Dr. Leisure are supported [by] substantial evidence available throughout the file.  The opinion letter provides that the plaintiff's "symptoms could resurface should a stressful situation arise and this could impair her ability to act in an emotionally stable manner.  In light of Bethany's diagnosis and her prognosis, it is apparent that her symptoms pose a limitation that could interfere with her ability to maintain employment" (Tr. 722).  While treatment records from Schwabe and Associates generally show that the claimant is doing well on medications, those records consistently reflect that the claimant's judgment and insight are fair (Tr. 433-474, 633-654). Treatment records also show intermittent complaints of "crying for no reason," depression, and conflict with others till learning to control her symptoms.  (*Id.*; Tr. 475-479).

Additionally, the opinions of the claimant's treating psychologists are supported by the claimant's report to Ms. Tebay, a consultative examiner, that she cries easily, becomes angry, and has a bad temper.  (Tr. 476).  The opinion statement also is supported by a letter from Dr. Dunn's office, which details an episode of escalation with the client during a consultative examination appointment.  (Tr. 412-413).  During this time, the claimant was noted to exercise poor judgment and engage in inappropriate behavior when she was told that her child could not be presented during her examination and that her appointment

15

would need to be rescheduled.  The claimant was described as "extremely mad" and "very upset."  Furthermore, she "yelled that no one [sic] told her and that it's not fair" and "caused a big scene in the waiting area."  [*Id*.]. (ECF No. 10).

\*\*\*

[W]hile the ALJ purported to give the opinions of Dr. Allen (Tr. 429-432) and Dr. Binder (Tr. 495-498) "significant weight," the ALJ completely ignored findings by each that strongly indicate that the plaintiff suffers from significant mental limitations that inhibit her ability to maintain employment (*Id.*; Tr. 57-58). According to Dr. Allen, the claimant is moderately limited in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting.  (Tr. 429-432). Likewise, Dr. Binder opined that the claimant is moderately limited in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration and to interact appropriately with the public, coworkers and supervisors. Additionally, Dr. Binder provided moderate limitations in the claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (Tr. 495-498).

Claimant asserts that the ALJ erred in finding that Claimant "retains the ability to perform work because '[s]ome of the physical and mental abilities and social interactions required in order to perform [admitted activities of daily living] are the same as those necessary for obtaining and maintaining employment'" (Tr. at 60, ECF No. 10).  Claimant argues that when the vocational expert (VE) considered the mental RFC opinions by G. David Allen, PhD, and James Binder, M.D., together, the VE testified that "claimant's mental limitations would make it difficult for her to sustain competitive employment" (ECF No. 10).

Claimant asserts:

16

When the ALJ does not give a treating source opinion controlling weight and determines that the claimant is not disabled, the determination or decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. See also 20 C.F.R. §§ 404.1527 and 416.927. Herein, the ALJ articulated two reasons for giving the opinion from Owens' treating psychologists little weight: it was inconsistent with the record as a whole and it was inconsistent with the psychologists' treatment notes (Tr. 58).

The ALJ's articulated reasons for giving the treating psychologists' opinion little weight are not sufficiently specific to allow the court to determine the reasons he gave that opinion little weight. In *Williams v. Astrue*, 2012 U.S. Dist. LEXIS 125158, 57 (N.D. W. Va. Aug 13, 2012)[6] the court found that the ALJ's rationale for giving a treating physician's opinion little weight was not sufficiently specific. Following the lead of the court in *Smith v. Astrue*, 2012 U.S. Dist. LEXIX 185844, *14-15 (N.D. W. Va. June 13, 2012), the *Williams* court used the case of *Cramer v. Astrue*, 2011 U.S. Dist. LEXIS 102968, 2011 WL 4055406 (D.S.C. Sept. 12, 2011 as the standard by which to compare an ALJ's stated rationale for discrediting the opinion of a treating physician, stating that "only an analysis like the one in *Cramer* is sufficiently specific to comply with 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p, 1996 SSR LEXIS 9."

***

The ALJ was required to evaluate the opinion of Ms. Fernandez and Dr. Leisure by applying the regulatory factors of 20 C.F.R. § 404.1527(b). Instead, the ALJ gave two reasons for his rejection of this opinion, neither of which is sound: (1) the lack of objective evidence, and (2) inconsistency with the record as a whole. (Tr. 58). Thus, the ALJ committed reversible error in failing to accord proper weight to and in failing to provide "good reasons" for rejecting the opinion of the plaintiff's treating psychologist. This error is not harmless, and therefore, a remand of this case is warranted.

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act.

---

[6] Adopted by *Williams v. Astrue*, 2012 U.S. Dist. LEXIX 125154 (N.D. W. Va. Sept. 4, 2012)

*Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005). The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2) and 416.927. If a medical opinion is not supported by relevant evidence or it is inconsistent with the record as a whole, it will be accorded significantly less weight. *See* 20 C.F.R. §§ 404.1527 (c)(3), (4) and 416.927; *Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work. These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

20 C.F.R. §§ 404.1529(c)(3) and 416.929 states that "[w]e will consider all of the evidence presented, including information about your work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons." The ALJ found that Claimant's allegations of disabling functional limitations were inconsistent with her level of daily activity and interaction. The ALJ stated: "The claimant admitted activities of daily living including caring for her daughter, attending church, having a fiancé, going to a homecoming game, cleaning house and going shopping" (Tr. at 60).

18

In totality, the ALJ did not arbitrarily discount or outright ignore the opinions of Ms. Fernandes and Dr. Leisure (Tr. at 58).  The ALJ evaluated their opinions in accordance with the regulations and case law and assigned them appropriate weight.

### Credibility Determination

It is well-settled that a claimant's allegations alone will not establish that she is disabled. *See*, 20 C.F.R. § 404.1529 and *Craig v. Chater*, 76 F.3d 585, 594-595 (4th Cir. 1996).  While the ALJ must seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20 C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595.  As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations.  *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Defendant asserts:

> Plaintiff's claim for disability is simply not credible in light of her work history, positive response to treatment, and her high level of functioning on a daily basis.  Importantly, an ALJ is not required to accept a claimant's testimony uncritically.  20 C.F.R. § 404.1529, 416.929.  A claimant's statements about her impairments, alone, are never enough to prove disability.  *Id.*  Subjective complaints at the very least should be corroborated by the objective medical evidence of record.  *Id.*  It is the ALJ's role to ascertain whether the claimant has a medically determinable impairment that could reasonably cause the symptoms alleged and then to evaluate the intensity and persistence of the claimant's symptoms to determine whether they limit her capacity to work.  20. C.F.R. § 404.1529, 416.929.  This determination includes an evaluation of credibility, and the ALJ, as the finder of fact, is given great discretion in making credibility findings.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

19

In accordance with the requirements of SSR 96-7p[7] and 20 C.F.R. §§ 404.1529 and 416.929, the ALJ properly identified various factors that he had considered in determining that Plaintiff's claim for disability was not fully credible. (Tr. 58-61). For example, the ALJ was persuaded by Plaintiff's frequent inconsistent statements, which were not supported by the medical evidence of record (Tr. 59). The ALJ provided multiple examples of these inconsistencies (Tr. 60-61):

- In direct contrast to statements made to Ms. Keller in March 2009, a thorough review of the entire record from Westbrook Health Services, Inc., from July 2009 through February 2010, failed to substantiate a diagnosis of either ADHD or bipolar disorder (Tr. 393-411). Notably, Plaintiff's medications were working well and she declined employment counseling (Tr. 403, 410).

- Plaintiff worked from August 209 through October 2010, except that she voluntarily stopped working when her car broke down and when she needed to move, not due to her mental impairments (Tr. 238, 251, 466).

- Despite a diagnosis of borderline intellectual functioning, Plaintiff felt sufficiently capable to enroll in college, and although she dropped out in July 2010, it was because it was too difficult to juggle, school, work, and her childcare (Tr. 456).

- Plaintiff's adequate social functioning is demonstrated by her ability to host a birthday party, which included 25 children, get engaged, and testified that she attended the Belleville homecoming with friends and her fiancé (Tr. 110-11, 647).

The ALJ reasonably gave more weight to the objective details and chronology of the record (Tr. 59), which show that Plaintiff stopped working only because she became pregnant (Tr. 80, 84), resumed working part-time to accommodate her baby's schedule (Tr. 103), and was capable of working full-time as her medications

---

[7] Social Security Ruling 96-7p, Policy Interpretation Ruling, Titles II and XVI: Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statement, 61 Fed. Reg. 34483.

worked well for the entire relevant period of review, and therapy stabilized and normalized her emotional state to the point that daily functioning was not impaired (Tr. 393-411, 433-74, 633-53, 721, 739-58)

\*\*\*

Despite Plaintiff's allegations of disability, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible (Tr. 53, 59-61). The ALJ specifically noted that Plaintiff's credibility was diminished because: (1) her allegations were greater than expected in light of the objective evidence of record, (2) due to her frequent inconsistent statements, and (3) her normal activities of daily living were inconsistent with disability (Tr. 59-61). In support of his conclusions, the ALJ relied on objective evidence obtained by: (1) psychiatrist Dr. Worthington, (2) Valerie Keller, PA-C (who treated Plaintiff at Schwabe), (3) consultative examiner Brenda Tebay, M.A., (4) the opinions from the state agency physician consultants Drs. Allen and Binder, and (5) the letter from Ms. Fernandes confirming that Plaintiff's ability to function was satisfactory and her mood disorder not acute or debilitating (Tr. 53-58, ECF No. 11).

In March 2009, at a comprehensive psychiatric evaluation, Claimant reported that she was diagnosed by Kathryn Worthington, M.D., Staff Physician at Westbroook Health Services Inc. with attention deficit-hyperactivity disorder and bipolar disorder. However, the ALJ stated that "a thorough review of the entire record from Westbrook Health Services, Inc., from July 20, 2009, through February 9, 2010, offers absolutely no diagnosis of either attention deficit-hyperactivity disorder or bipolar disorder." The ALJ held that "This inconsistent statement by the claimant to her health care provider greatly reduces the credibility of the claimant" (Tr. at 60).

The ALJ found that although Claimant alleged having an anxiety disorder, bipolar disorder and attention deficit hyperactivity disorder, the fact that she was capable of attempting a job readiness class diminishes her credibility. (*Id.*) The ALJ noted that Claimant was dismissed from the class because she missed too many classes due to anxiety attacks (Tr. at 60, 81).

Claimant's conflicting assertions were considered and discussed by the ALJ. Substantial evidence supports the ALJ's finding that "the claimant's credibility is diminished due to her frequent inconsistent statements, which were not supported by the medical evidence of record.

<u>Vocational Expert's Testimony</u>

At the hearing, the ALJ asked Vocational Expert (VE) if a hypothetical individual had the same age, education and work experience as Claimant, no exertional limits and has the RFC to perform work at a light exertion level with the same non-exertional limitations stated before could perform jobs in the national and regional economy. The VE testified that the hypothetical individual could perform jobs such a store clerk, overnight stock clerk and the Claimant has past work experience in these types of jobs. As far as jobs the hypothetical individual could perform that Claimant does not have work experience in, the VE testified that the individual could work as a mail clerk, night cleaner or car cleaner (Tr. at 119).

The ALJ then asked the VE if the hypothetical individual was limited to only occasional contact with coworkers and supervisors, instead of frequent contact as in the first hypothetical, would the job performances change. The VE testified that no, the individual could perform the same jobs as provided in response to the first hypothetical (Tr. at 120).

The ALJ then asked the VE if the hypothetical individual would be off task in performing job duties more than a third of the work day, in addition to regular breaks and would not be able to tolerate any contact with coworkers, the public or supervisors, would there be any jobs the individual could perform (Tr. at 120-121). The VE testified no, there would be no jobs such an

individual could perform (Tr. at 121).  Pursuant to SSR 00-4[8], the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the District Court DENY the Claimant's Brief in Support of Judgment on the Pleadings, GRANT the Defendant's Brief in Support of Defendant's Decision and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Judge Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

---

[8] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

DATE:        July 31, 2015

_____
Dwane L. Tinsley
United States Magistrate Judge