IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BETHANY ANN OWENS,

        Plaintiff,

v.                                    CIVIL ACTION NO.   2:14-cv-17942

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Bethany Ann Owens's Complaint seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"). (ECF 2.) By standing order entered on May 7, 2014 and filed in this case on June 30, 2014, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and recommendations for disposition (the "PF&R"). (ECF 4.) On July 31, 2015, Magistrate Judge Tinsley entered his PF&R, in which he recommends that this Court deny Plaintiff's Brief in Support of Judgment on the Pleadings, (ECF 10), grant Defendant's Brief in Support of Defendant's Decision, (ECF 11), and dismiss this matter from the Court's docket. (ECF 13.) Plaintiff filed timely objections to the PF&R on August 13, 2015 (the "Objections"). (ECF 14.)

For the reasons that follow, the Court **OVERRULES** the Objections, (ECF 14), **ADOPTS** the PF&R, (ECF 13), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's Brief in Support of Judgment on the Pleadings, (ECF 10), **GRANTS**

1

Defendant's Brief in Support of Defendant's Decision, (ECF 11), **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** the action.

## I. *Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed applications for disability insurance benefits and supplemental security income on March 4, 2011, alleging disability as of July 31, 2008. (ECF 9-7 at 4–9, 10–16.) The applications were initially denied on May 3, 2011, (ECF 9-6 at 2–7), and upon reconsideration on October 11, 2011, (*id*. at 12–17).

On October 11, 2012, Plaintiff appeared via video teleconference for a hearing before Administrative Law Judge Jason R. Yoder (the "ALJ"). (ECF 9-4 at 2–59.) On November 27, 2012, the ALJ issued an unfavorable decision.[1] (ECF 9-3 at 2–27.) The Appeals Council denied review of the ALJ's decision on April 9, 2014. (ECF 9-2 at 2–8.) Thereafter, on June 9, 2014, Plaintiff filed the Complaint in this Court. (ECF 2.)

## II. *Standard of Review*

**A.  Review of the PF&R**

---

[1] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since July 31, 2008, the alleged onset date." (ECF 9-3 at 7.) At step two, the ALJ found that Plaintiff has the following severe impairments: "bipolar disorder, attention deficit-hyperactivity disorder, generalized anxiety disorder, and borderline intellectual functioning." (*Id*. at 8.) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id*. at 8–11.) The ALJ next found that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels," with certain listed nonexertional limitations. (*Id*. at 11–20.) At the fourth step, the ALJ determined that Plaintiff "is capable of performing past relevant work as an overnight stocker." (*Id*. at 20.) Nonetheless, the ALJ proceeded to the fifth step of the analysis and made the alternative finding that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 21.) The ALJ relied on the testimony of a vocational expert in making this step-five determination. (*See id*.)

2

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

**B.      Review of the ALJ's Findings and Decision**

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). If "conflicting evidence allows reasonable minds to differ as to whether a

3

claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[2] *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III.    Discussion

---

[2] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

Plaintiff objects to the PF&R's affirmance of the ALJ's decision to assign "little weight" to an opinion submitted by two treating psychologists from Schwabe and Associates ("Schwabe")—Ninette Fernandes, LLB, MA and Tina M. Leisure, Ph.D. (ECF 14.) Plaintiff argues that the ALJ failed to comply with the requirements set forth in 20 C.F.R. § 404.1527 in assessing the proper weight to give a treating physician's opinion. Specifically, Plaintiff argues that "[t]he ALJ failed to provide sufficient 'good reasons' for assigning 'little weight' to the opinion of Ms. Fernandes and Dr. Leisure, making it impossible for this Court to determine whether his decision was based on substantial evidence." (*Id*. at 5.) For the reasons that follow, the Court **OVERRULES** Plaintiff's objection.

Generally, an ALJ will give more weight to the medical opinions of "a source who has examined [a claimant] than to the opinion of a source who has not examined [a claimant]." SSR 06-03P; *see also* 20 C.F.R. §§ 404.1527(c)(1) & 416.927(c)(2). Further, medical opinions from a treating physician are entitled to special weight. Specifically, an opinion from a "treating source" as to the "nature and severity" of a claimant's impairment is entitled to "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). Where a treating source's opinion is not entitled to controlling weight, the ALJ must still consider its appropriate weight with reference to the following factors: (1) the length of treatment of the claimant by the treating source; (2) the frequency of examination by the treating source: (3) the nature and extent of the treatment relationship; (4) the support of the treating source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the

treating source; and (7) any other relevant factors. 20 C.F.R. §§ 404.1527(c) & 416.927(c). The ALJ is required to give "good reasons" for the weight ultimately given to the treating source's opinion. *Id*.

When an ALJ does not give a treating source's medical opinion controlling weight, his decision must present sufficient "good reasons" to make clear to a reviewing court why the ALJ determined the opinion, in accordance with the regulations, to be either not supported by clinical data or not consistent with the other substantial evidence in the record. Once this obligation is fulfilled, the ALJ must still provide some explanation for the ultimate, non-controlling weight to be accorded the treating source opinion. Here, "[t]he ultimate test is not whether the ALJ mechanically recited each [20 C.F.R. § 404.1527(c)(2)] factor, but whether it is clear from the decision that all of the pertinent factors were considered." *McNeely v. Colvin,* Civil Action No. 2:13-cv-767, 2014 WL 4929437, at *9 (S.D.W. Va. Sept. 30, 2014) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) and *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004)). As this Court has noted before, the regulations require an ALJ to consider the six enumerated factors listed above, but does not demand explicit written discussion of each factor. *Hardy v. Colvin*, Civil Action No. 2:13-cv-20749, 2014 WL 4929464, at *2 (S.D. W. Va. Sept. 30, 2014.)

"An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (citations omitted). In this case, a review of the ALJ decision clearly reveals that the decision to give the treating source opinion at issue little weight was based on "good reasons," namely that the opinion was inconsistent with the record as a whole, and that

the ALJ's conclusion was supported by substantial evidence. *See Craig*, 76 F.3d at 590 ("By negative implication, if a [source's] opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

The treating source opinion is a two-page document detailing the nature of Plaintiff's therapy sessions with the treating psychologists, Ms. Fernandes and Dr. Lesiure, and the goals of such sessions. (ECF 9-18 at 31–32.) Although reporting that the Plaintiff had made progress during these therapy sessions, the opinion notes that the Plaintiff's "symptoms would continue to interfere with her ability to be gainfully employed." (*Id*. at 32.) Although these symptoms had improved with treatment, the opinion expresses concern that the symptoms might "resurface should a stressful situation arise . . . ." (*Id*.) Ultimately, the opinion concludes: "[i]n light of [Plaintiff's] diagnosis and her prognosis, it appears that her symptoms pose a limitation that could interfere with her ability to maintain employment." (*Id*.)

First, the ALJ did not accord the opinion of these psychologists controlling weight. Specifically, the ALJ characterized their testimony as an opinion that the claimant's symptoms "posed a limitation that could interfere with her ability to maintain employment." (ECF 9-3 at 17.) The ALJ determined this opinion to be "on an issue reserved to the Commissioner," and as such not entitled to controlling weight. *Id*. This decision accords with the regulations, which provide that the ultimate determination on disability is reserved to the Commissioner, and that medical opinions on reserved issues are "not medical opinions" entitled to controlling weight. 20 C.F.R. § 404.1527(d). To the extent the treating source in this case expresses an opinion as to Plaintiff's ultimate disability, that opinion is not entitled to controlling weight and the ALJ was correct to treat it accordingly.

Moreover, the ALJ made clear that the opinion was not consistent with the evidence in the record. In making the ultimate assessment as to the appropriate weight to accord the opinion, the ALJ settled upon "little weight" because "it is not supported by objective evidence and it is inconsistent with the record as a whole." *Id*. Specifically, the ALJ noted that the opinion was internally inconsistent with Schwabe's treatment notes, which indicated that Plaintiff was generally doing well and expressing no new concerns, and inconsistent with Plaintiff's admitted life activities. *Id*. Thus, in making its determination to give the opinion little weight, the ALJ relied on the fact that its conclusions were not consistent with evidence in the record as a whole. So long as this determination was based on substantial evidence in the record, the ALJ was within his discretion to do so. *See Mastro*, 270 F.3d at 178 ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992))).

Substantial evidence supports the ALJ's conclusion that the treating source's opinion was inconsistent with the record as a whole. In fact, that opinion was inconsistent even with Schwabe's written records describing Plaintiff's treatment at the facility. As the ALJ decision notes, Plaintiff received treatment for both attention deficit-hyperactivity disorder and bipolar disorder with Schwabe. (ECF 9-3 at 13.) At sessions with Schwabe, Plaintiff consistently indicated that she was doing well and never reported additional concerns over the course of her treatment. (*Id*. at 9–10.) The record of Plaintiff's treatment while at Schwabe shows every indication that her condition was improving and that Schwabe personnel had no reason to be concerned with Plaintiff's symptoms. (ECF 9-15 at 15–36.)

8

Moreover, Plaintiff's overall treatment history demonstrates a pattern of general improvement, rather than relapse, in response to therapeutic treatment.  (*See* ECF 9-3 at 13 (noting "almost immediate improvement" in response to bipolar treatment with Dr. Valerie Keller); *id*. at 14 (noting relatively rapid improvement in response to medication for attention deficit-hyperactivity disorder); *id*. at 15 (noting that medications for generalized anxiety disorder were "helpful and effective" and that treatment with Dr. Keller led to "immediate improvement").) This record of successful treatment supports the ALJ's statement that "the claimant improved with treatment and is capable of performing at least simple, routine, repetitive tasks," (*id*. at 18), as well as the ALJ's ultimate conclusion that the treating source's opinion to the contrary was in opposition to the record as a whole.

Further, the record is replete with admissions by Plaintiff as to functioning capacity that support the ALJ's determination and contradict the treating source opinion that Plaintiff's symptoms presented a continuing interference "with her ability to be gainfully employed."  (ECF 9-18 at 32.)  The ALJ notes several examples of Plaintiff's ability to engage effectively in everyday life activities, including getting engaged, attending a football game, attending church, cleaning and maintaining her house, caring for herself and her child, and even throwing a birthday party for her daughter with 25 other children as guests.  (ECF 9-3 at 16, 18–19.)  The record also reveals testimony that on an average day the Plaintiff runs errands, goes grocery shopping, spends time with friends, and does the laundry.  (*Id*. at 18.)  The ALJ further cited Plaintiff's testimony suggesting that a primary reason that she had not been able to get work in the past was because she had been unable to find a job that could accommodate her daughter's schedule, and that

9

difficulty balancing the responsibilities of being a single mother, rather than any disability, had led Plaintiff to leave college. (*Id*. at 19.)

On this record, Plaintiff is incorrect to argue that "the only mention of evidence the ALJ considered in weighing the treating source opinions were treatment notes from Schwabe . . . ." (ECF 14 at 5.) To the contrary, the ALJ noted the opinion of the treating source opinion was "not supported by objective evidence and . . . inconsistent with the record as a whole." (ECF 9-3 at 17.) More importantly, the ALJ referenced specific evidence in the record with which the source opinion was inconsistent, which included not only the Schwabe treatment notes, but also "claimant's admitted activities of daily living that have already been described above in this decision." (*Id*.)

As described above, the rest of the ALJ decision catalogued several specific pieces of evidence indicating Plaintiff's general ability to function and perform at least simple, repetitive, and routine tasks. It further demonstrated Plaintiff's history of successfully maintaining improvement in response to appropriate treatment programs. Substantial evidence in the record, including particularly Plaintiff's status as a caregiver to her young daughter, her past ability to work as a night stocker, and her history of consistent improvement (without any corresponding setbacks) in response to treatment programs, contradicted the treating source opinion that Plaintiff's symptoms would make it difficult for her to maintain any employment in the future. As such, the ALJ was entitled to give that opinion correspondingly lesser weight.

The record in this case reveals that the ALJ gave adequate consideration to the treating source opinion of Ms. Fernandes and Dr. Leisure in compliance with the applicable regulations. The ALJ gave "little weight" to the opinion for the "good reason" that it was inconsistent with the

rest of the record as a whole, a record the ALJ comprehensively addressed. As such, the ALJ's determination applied the correct standard and is supported by substantial evidence.

### *IV.     Conclusion*

For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections, (ECF 14), **ADOPTS** the PF&R, (ECF 13), to the extent it is consistent with this Memorandum and Opinion and Order, **DENIES** Plaintiff's Brief in Support of Judgment on the Pleadings, (ECF 10), **GRANTS** the Defendant's Brief in Support of Defendant's Decision, **AFFIRMS** the final decision of the Commissioner, **DISMISSES** this case, and **DIRECTS** the Clerk to remove this action from the Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     September 30, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE